1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  ESTATE OF ROBERT CLIFFORD, et        No. CIV. S-11-2591 LKK/CKD
    al.,
12
                   Plaintiffs,
13                                         **ORDER**

         v.
14
    PLACER COUNTY, et al.,
15
                   Defendants.
16

17      Plaintiffs Estate of Bobby S. Clifford (Estate) and Linda K.

18  Clifford bring this § 1983 action for damages against defendants

19  Placer County, the Placer County Sheriff's Department, and Placer

20  County Sheriff's Deputy David Clark (Clark).  The action arises

21  from the shooting death of Bobby S. Clifford (Clifford) by

22  defendant Clark.  Plaintiffs raise seven claims under 42 U.S.C. §

23  1983 based on alleged violations of federal constitutional rights

24  (First, Second, Third, Fifth, Sixth, Seventh and Eighth Causes of

25  Action), one claim under 42 U.S.C. § 1985 for conspiracy to

26  violate Clifford's constitutional rights (Fourth Cause of

27  Action), and four pendent state law claims (Ninth through Twelfth

28  Causes of Action).  The action is proceeding on plaintiffs'

                                  1

1    second amended complaint, filed February 7, 2012 (ECF No. 15),

2    and is before the court on defendants' motion for summary

3    judgment and, in the alternative, for summary adjudication.[1]

4         Defendants contend that the Estate lacks capacity to sue and

5    should be dismissed.  Plaintiffs have not responded to this

6    argument.  Under California law, which controls the determination

7    of capacity to sue and be sued in this § 1983 action, see Fed. R.

8    Civ. P. 17(b)(3), defendants are correct.  See Smith v. Cimmet,

9    199 Cal.App.4[th] 1381, 1390-91 (Cal.App. 1 Dist. 2011).  The Estate

10   will be dismissed.[2]

11        In opposition to the motion, plaintiff concedes that

12   defendants are entitled to summary judgment on the Monell claims,

13   medical claims, conspiracy claims, and claims against Placer

14   County.  See Pl.'s Opp. (ECF No. 38) at 18 n.3.  Accordingly,

15   defendants' motion for summary judgment will be granted as to

16   plaintiff's third, fourth and seventh claims for relief.  The

17   claims remaining for resolution are those raised against

18   defendant Clark.

19   **I.   FACTS**

20        **A.  Undisputed Facts[3]**

21        On August 1, 2011, at approximately 10:30 p.m. Clark was on

22   duty and in a parking lot at Sierra College and Douglas Boulevard

23

[1] The motion came on for hearing before the undersigned on May 5, 2014.
24   Orestes A. Cross, Esq., appeared as counsel for plaintiffs.  Deputy County
     Counsel Valerie Floss appeared as counsel for defendants.

25   [2] For the remainder of this order plaintiff will be used in the singular to
     refer to the remaining plaintiff, Linda Clifford, who sues here both in her
26   individual capacity with right of survivorship and as personal representative
     of the Estate.

27   [3] The undisputed facts are facts admitted by plaintiff in response to
     defendants' statement of undisputed facts and some contained in dispatch
28   records.

in Granite Bay, California.  Resp. to Defs.' Proposed Statement
of Undisputed Material Facts (ECF No. 39) at 1.  Clark was aware
of prior reports of a burglary and drug deals in this parking
lot.  Id. at 2.

"Clark observed a vehicle in the middle of the parking lot,
not next to any particular business."  Id.  Clark went into a
convenience store in the parking lot.  Id.  After he exited the
store, he "parked his patrol car behind the parked vehicle,
reported to dispatch that he was conducting a vehicle check, and
activated his spotlight on the car." Id. at 3.  Clifford was in
the parked vehicle.  Id.   When Clark parked behind Clifford's
car, there was nothing in front of the car blocking its path.
Id.

There was a gun on the passenger seat of the vehicle an
arm's length away from Clifford.  Id.  at 6.  After Clark
observed the gun, he requested back up and informed dispatch that
he had a person at gunpoint.  Id. at 7.  Subsequently, Clark
fired one series of four shots in rapid succession.  Id. at 8.
Clark estimates that not later than one minute after shooting
Clifford he radioed that shots had been fired and a code 3 for an
ambulance.  Id. at 9.  Clark also estimates that his entire
encounter with Clifford lasted less than five minutes.  Id.

Dispatch records show an initial report of a vehicle check
by Clark at approximately 10:32 p.m. on August 1, 2011.  Defs.
Ex. C (ECF No. 21-6) at 39. About a minute later, at
approximately 10:33 p.m. a 10-35 radio transmission is recorded.
Id.  Seventeen seconds later there is a transmission of "one at
gunpoint." Id.  At approximately 10:34 p.m. the dispatch record

3

1   shows "Comment:  Roseville PD enrt C/3."  Id.  At approximately

2   10:35 p.m., a transmission of "gun on the front seat and

3   uncompliant person" [4] is recorded.  Id.  Dispatch records include,

4   at approximately 10:36 p.m. the comment "Units are Code 3."  Id.

5   Approximately thirty seconds later a transmission of "shots fired

6   – start and ambulance code 3" is recorded.  Id.

7        By 10:40 p.m., Roseville Police Department officers had

8   started first aid on Clifford. Id. at 10.  Clifford was

9   pronounced dead at 10:59 p.m. at Sutter Roseville Medical Center.

10  Id. at 11.

11       A toxicology report included with the Coroner's Report

12  showed Clifford had a blood alcohol level of 0.223 and 8.0 ng/mL

13  of methamphetamine.  Defs. Ex. F (ECF No. 21-6) at 64, 70, 77.

14  The report indicates that the specimens were collect at 9:15 a.m.

15  on August 3, 2011, approximately 33 hours and 45 minutes after

16  Clifford died.  Id. at 56, 64.

17       Prior to approaching Clifford's vehicle on August 1, 2011,

18  Clark did not know Clifford or his mother, plaintiff Linda

19  Clifford.  Id.

20       **B.  Clark's Assertions Concerning the Shooting[5]**

---

[4] Clark also avers in his declaration that he radioed to dispatch that "he had an uncompliant person."  Clark Decl. at ¶ 11.  Plaintiff objects to the statement that Clark used his radio as irrelevant, and that Clifford was uncompliant as hearsay.  Those objections are not properly before the court on this motion for summary judgment.  See Fed. R. Civ. P. 56(c)(2).

[5] Plaintiff contests Clark's description of events on the ground that it is uncorroborated.  Plaintiff argues that because Clark is the sole surviving witness to the deadly force incident at issue pursuant to Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994), his statements must be corroborated by other evidence in order to support summary judgment.  Plaintiff reads Scott too broadly.  Scott teaches that where the defendant officer is the only surviving witness of a deadly force incident, the court "must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert

1    The court has reviewed Clark's August 2, 2011 interview with
2    investigators after the shooting (ECF No. 21-6) and his February
3    10, 2014 declaration filed in support of defendants' motion for
4    summary judgment (ECF No. 21-4), both of which have been tendered
5    by defendants.  The court has also reviewed the  transcript of
6    Clark's March 17, 2014 videotaped deposition, tendered by
7    plaintiff.  In one or more of these documents, Clark reports the
8    following:
9        At his deposition, Clark testified that he went to the
10   parking lot to refill his water at the convenience store.  Clark
11   Dep. at 38:11-16; Clark Decl. at ¶ 4.  He was on "routine patrol"
12   and there had been no call to the parking lot.  Clark Dep. at
13   38:10-16.  Before entering the convenience store he "heard some
14   very loud music."  Clark Decl. at ¶ 4.  He saw a couple of cars
15   parked in the parking lot and could not tell which one the music
16   was coming from.  Clark Dep. at 43:11-15. After refilling his
17   water and exiting the store, he again heard the music.  Clark
18   Decl. at ¶ 4.  He scanned the parking lot "to try and figure out
19   where this loud music was coming from."  Clark Dep. at 41:21-22.
20   He got in his patrol car and drove toward a car in the middle of
21   the parking lot.  Id. at 46:3.  He determined that the first car
22
23
24   _____

testimony proffered by the plaintiff, to determine whether the officer's story
25   is internally consistent and consistent with other known facts. . . .  In
other words, the court may not simply accept what may be a self-serving
26   account by the police officer. It must also look at the circumstantial
evidence that, if believed, would tend to discredit the police officer's
27   story, and consider whether this evidence could convince a rational factfinder
that the officer acted unreasonably."  Id. (internal citations omitted).  The
28   court treats the following facts as  subject to the heightened scrutiny
required by Scott.

was empty and as he got closer to the second car he could tell it was coming from that car.  Defs. Ex. A (ECF No. 21-4) at 12.[6]

Clark was aware of reports of an auto burglary in this parking lot and a report from the manager of the adjacent Walgreens who "suspected that cars were pulling up to each other in the parking lot and made [sic] hand to hand drug transactions."  Clark Decl. at ¶ 3.  At his deposition, he testified that he approached Clifford's car because the music was "very, very loud" and "it was not normal for cars to be blasting their music and drawing attention to themselves like that."  Clark Dep. at 48:2-9.  In view of the loud music and the prior reports, he believed he had to determine what was going on with Clifford's car.  Clark Dep. at 46:22-48:9.[7]

After Clark shined his spotlight on Clifford's vehicle, Clifford turned down the music volume, "opened his driver's side door and stepped out with his left foot."  Clark Decl. at ¶ 7. Clark approached the car and ordered Clifford to stay in his car or to get back in the vehicle.  Clark Dep. at 68:2-9.  He did not, at that point, verbally identify himself as a deputy sheriff.  Defs. Ex. A (ECF No. 21-6) at 9.  In addition to his gun, Clark had pepper spray and a taser on his belt.  Clark Dep. at 54:14-55:1.  Clark observed that Clifford "was real slow with his movements and was not alert, and . . . Clifford's eyes were bloodshot and glossy."  Clark Decl. at ¶ 8.  Clifford had no

---

[6] At his deposition, Clark testified that before he got in his car he "could tell basically where the music was coming from."  Clark Dep. at 46:4-6.
[7] At his initial interview, Clark told investigators that after learning of the other crimes he thought he needed "to kind of make an extra patrol into that parking lot and look for cars that might be fitting the description of, you know, doing the drug deals."  Defs. Ex. A (ECF No. 21-6) at 10.

shirt on and "looked very disheveled."  Id.  Clifford did not

comply with the command right away.  Clark Dep. at 68:21.  Clark

testified at his deposition that Clifford

> just was swaying a little bit.  Looked a
> little disheveled as I got closer to him. He
> seemed really slow with his movements and his
> responses as far as trying to position
> himself back into the car, almost like he
> wasn't able to do it without help, or he
> didn't have the weight or the momentum to get
> himself out of the car.

Id. at 68:25-69:6.  Clark thought Clifford "seemed impaired."

Id. at 69:8; Clark Decl. at ¶ 8.  Clifford did not respond to

Clark's verbal commands, and Clark estimates it took him 30

seconds or more to get back in the car.  Clark Dep. at 71:5-17.

Later in the deposition, Clark testified that Clifford was "very

slow to comply" with the initial command, he "appeared very

disheveled and, you know, his eyes were blood shot" and "his

movement was real slow."  Id. at 74:13-15.  He "wasn't quick with

his movements and he was swaying within the seat."  Id. at 74:23-

24.

    Clifford did not respond to Clark's initial question about

why he was playing the music so loud.  Id. at 75:8-11.  Clark

repeated the question and got "some type of unintelligible

response."  Id. at 76:3-10.  Clark then asked Clifford if he had

identification and Clifford "said yeah."  Id. at 76:12-13.

Clifford reached toward the glove compartment of the vehicle and

opened the glove compartment.  Clark Decl. at ¶9; Defs. Ex. A

(ECF No. 21-6) at 14. As he did, Clark observed a gun on the

front passenger seat.  Resp. to Defs.' Proposed Statement of

Undisputed Material Facts (ECF No. 39) at 6. Clark drew his gun and ordered Clifford to keep his hands on the steering wheel. Id. at 7.

According to Clark, Clifford slowly brought his hands back in the "general direction of the steering wheel" and "briefly" placed his hands on the wheel.  Clark Dep. at 84:1-4, 85:24-86:1. Clifford then kept taking his hands on and off the steering wheel, looking toward the gun, and "moving, swaying in the seat." Id. at 86:22-24. Clark continued to tell Clifford not to reach for the gun and that he would be shot if he did so.  Id. at 87:1-3.  Clifford kept taking his hands on and off the wheel and began to ask Clark who he was.  Id. at 87:5-6.  At that point, Clark verbally identified himself as a Placer County Sheriff's Deputy. Id. at 87:8-9; Defs. Ex. A (ECF No. 21-6) at 9.  Although he believed Clifford knew he was a sheriff's deputy, he gave him the "benefit of the doubt" and shined his flashlight on his badge. Clark Dep. at 94:6; Defs. Ex. A (ECF No. 21-6) at 15.

Clark states that he radioed one, two, or three times for immediate back up.  Clark Dep. at 89:6-15, 92:7-8; Defs. Ex. A (ECF No. 21-6) at 15.  He was not sure whether his transmissions were received.  Id.

At his deposition, Clark testified that the "majority of the time" Clifford's hands were hovering in front of the steering wheel, but he was "clearly not following the simple directions of keep the hands on the steering wheel."  Clark Dep. at 92:10-93:1. Clark felt Clifford "was testing to see how far he could get and what kind of reaction [Clark] was going to have based on him taking his hands off and on the steering wheel."   Id. at 92:12-

8

15.  Clark reported that at some point during the exchange, Clifford's "demeanor changed" and he started to yell, become hostile, and "more aggressive in his movements."  Id. at 96:14-18.

Clifford continued to question Clark and twice demanded to see his badge.  Clark Dep. at 95:23-96:6.  At some point, perhaps between these inquiries, Clark radioed that had "one in gunpoint, gun in the car, and that he was not compliant."  Id. at 99:23-100:2.  Clark testified that he was shining his flashlight in Clifford's eyes so that Clifford couldn't have good vision.  Id. at 100:7-9.  Clifford tried to lift himself above the door frame to get the flashlight out of his eyes.  Id. at 100:9-10.  Clifford was "looking and . . . moving forward and he makes a reach towards the gun."  Id. at 100:11-12.  Clark avers in his declaration that this was a "controlled – full arm's reach for the gun" whereupon Clark fired his gun, shooting Clifford.  Clark Decl. at ¶ 13.[8]

### C.  Plaintiff's Expert Declarations

Defendants filed their motion for summary judgment on February 14, 2014.  The court heard oral argument on May 5, 2014.  On the same day, the United States Supreme Court issued  Tolan v. Cotton, 572 U.S. ___, 134 S.Ct. 1861 (2014) (per curiam).  By order filed May 7, 2014, the parties were granted an additional period of fifteen days in which to file supplemental briefs addressing the application, if any, of Tolan to the motion at bar.

---

[8] In his deposition, Clifford described the movement as toward the gun as different from Clifford's earlier movements, "a little bit quicker, and it was deliberate."  Clark Dep. at 101:15-102:2.

9

1    On May 13, 2014, defendants filed a supplemental brief.

2    On May 22, 2014, plaintiff filed a supplemental brief accompanied

3    by two expert declarations.  On the same day, defendants filed a

4    response to plaintiff's supplemental brief, requesting that the

5    two expert declarations be stricken or, in the alternative, that

6    defendants be granted an opportunity to respond to the evidence

7    and argument thereon.  Plaintiff responded to defendants' request

8    the day it was filed.  By order filed May 23, 2014, the court

9    denied defendants' request to strike the expert declarations and

10   granted defendants fifteen days to respond thereto.  Defendants

11   filed their response on June 6, 2014.  Defendants argue that the

12   expert evidence does not create a triable issue of material fact

13   and that the conclusions of one of the experts are inadmissible.

14       The court has reviewed the two expert declarations.  For the

15   reasons discussed below, the court finds that inconsistencies in

16   Clark's description of Clifford's appearance and behavior create

17   a credibility question that must be resolved by a jury.  While

18   one of plaintiff's experts also recognizes and relies on those

19   inconsistencies in his report, see Ex. A to Streed Decl. at 18,

20   expert testimony is not necessary on that precise question.  Even

21   if the court were to consider the expert opinions at this stage

22   of these proceedings, they do not materially affect the

23   disposition of this motion.  The court makes no findings at this

24   time on their admissibility at a subsequent stage of these

25   proceedings.

26   **III.  STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT**

27       Summary judgment is appropriate "if the movant shows that

28   there is no genuine dispute as to any material fact and the

10

1   movant is entitled to judgment as a matter of law." Fed. R. Civ.

2   P. 56(a); <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009) (it is the

3   movant's burden "to demonstrate that there is 'no genuine issue

4   as to any material fact' and that the movant is 'entitled to

5   judgment as a matter of law'"); <u>Walls v. Cent. Contra Costa</u>

6   <u>Transit Auth.</u>, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam)

7   (same).

8       Consequently, "[s]ummary judgment must be denied" if the

9   court "determines that a 'genuine dispute as to [a] material

10  fact' precludes immediate entry of judgment as a matter of law."

11  <u>Ortiz v. Jordan</u>, 562 U.S. ___, 131 S. Ct. 884, 891 (2011)

12  (quoting Fed. R. Civ. P. 56(a)); <u>Comite de Jornaleros de Redondo</u>

13  <u>Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011)

14  (en banc) (same), <u>cert. denied</u>, 132 S. Ct. 1566 (2012).

15      Under summary judgment practice, the moving party bears the

16  initial responsibility of informing the district court of the

17  basis for its motion, and "citing to particular parts of the

18  materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show

19  "that a fact cannot be . . . disputed." Fed. R. Civ. P.

20  56(c)(1); <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp.</u>

21  <u>(In re Oracle Corp. Securities Litigation)</u>, 627 F.3d 376, 387

22  (9th Cir. 2010) ("The moving party initially bears the burden of

23  proving the absence of a genuine issue of material fact") (citing

24  <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986)).

25      A wrinkle arises when the non-moving party will bear the

26  burden of proof at trial. In that case, "the moving party need

27  only prove that there is an absence of evidence to support the

28  non-moving party's case." <u>Oracle Corp.</u>, 627 F.3d at 387.

1    If the moving party meets its initial responsibility, the

2    burden then shifts to the non-moving party to establish the

3    existence of a genuine issue of material fact. Matsushita Elec.

4    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986);

5    Oracle Corp., 627 F.3d at 387 (where the moving party meets its

6    burden, "the burden then shifts to the non-moving party to

7    designate specific facts demonstrating the existence of genuine

8    issues for trial"). In doing so, the non-moving party may not

9    rely upon the denials of its pleadings, but must tender evidence

10   of specific facts in the form of affidavits and/or other

11   admissible materials in support of its contention that the

12   dispute exists. Fed. R. Civ. P. 56(c)(1)(A).

13   The court's function on a summary judgment motion is not to

14   make credibility determinations or weigh conflicting evidence

15   with respect to a disputed material fact. See T.W. Elec. Serv. v.

16   Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

17   "In evaluating the evidence to determine whether there is a

18   genuine issue of fact," the court draws "all reasonable

19   inferences supported by the evidence in favor of the non-moving

20   party." Walls, 653 F.3d at 966. Because the court only considers

21   inferences "supported by the evidence," it is the non-moving

22   party's obligation to produce a factual predicate as a basis for

23   such inferences. See Richards v. Nielsen Freight Lines, 810 F.2d

24   898, 902 (9th Cir. 1987). The opposing party "must do more than

25   simply show that there is some metaphysical doubt as to the

26   material facts . . . . Where the record taken as a whole could

27   not lead a rational trier of fact to find for the nonmoving

28

1  party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475

2  U.S. at 586-87 (citations omitted).

3  **IV.  ANALYSIS**

4      **A.  Qualified Immunity**

5      Defendants seek summary judgment on plaintiff's first,

6  second, and eighth causes of action on the grounds of qualified

7  immunity.  The first and second causes of action allege

8  violations of Clifford's Fourth Amendment rights.  The first

9  cause of action claims unlawful seizure/detention of Clifford;

10  the second cause of action claims unlawful use of excessive and

11  deadly force.  The eighth cause of action is a survival action

12  for pain and suffering incurred by Clifford before he died.

13      The doctrine of qualified immunity protects a government

14  official from liability for civil damages except where the

15  official violates a constitutional right that "'was "clearly

16  established" at the time of the challenged conduct.'"  <u>Wood v.</u>

17  <u>Moss</u>, 134 S.Ct. 2056 (2014) (quoting <u>Ashcroft v. al-Kidd</u>, 563

18  U.S. ___, 131 S.Ct. 2074, 2080 (2011)).  The qualified immunity

19  inquiry has two prongs: (1) whether the officer's conduct

20  violated a constitutional right and (2) whether "the right at

21  issue was clearly established at the time of the incident such

22  that a reasonable officer would have understood her conduct to be

23  unlawful in the situation."  <u>Torres v. City of Madera</u>, 648 F.3d

24  1119, 1123 (9th Cir. 2011) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194,

25  201-02 (2001)).  The court has discretion to consider the two

26  factors in either order.  <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223,

27  236 (2009).  At summary judgment, resolution of the qualified

28  immunity defense turns whether the undisputed facts and the

inferences to be drawn therefrom, viewed in the light most favorable to the non-moving party, show a violation of clearly established federal constitutional rights.  See Tolan v. Cotton, 134 S.Ct. 1861, 1866 (2014).  In Tolan, the United States Supreme Court reminded us that their

> qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard.  In cases alleging unreasonable searches or seizures, we have instructed that courts should define the "clearly established" right at issue on the basis of the "specific context of the case."  Saucier, supra, at 201, 121 S.Ct. 2151; see also Anderson v. Creighton, 483 U.S. 635, 640–641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  Accordingly, courts must take care not to define a case's "context" in a manner that imports genuinely disputed factual propositions.  See Brosseau, supra, at 195, 198, 125 S.Ct. 596 (inquiring as to whether conduct violated clearly established law " 'in light of the specific context of the case' " and construing "facts ... in a light most favorable to" the nonmovant).

Tolan v. Cotton, id.

### 1. First Cause of Action

Clark contends that neither his initial approach to Clifford nor his subsequent detention of Clifford violated the Fourth Amendment's limits on detention.  He also contends that at the time of the events at bar it was not clearly established that a peace officer would violate the Fourth Amendment by questioning an occupant of a parked vehicle and detaining a person "reasonably suspected of playing loud music and subsequently

1   suspected of driving under the influence."  Defs.' Mem. of Points

2   and Authorities (ECF No. 21-1) at 27.

3       Plaintiff contends Clark's testimony that there was loud

4   music coming from the car and that he suspected Clifford was

5   under the influence of drugs or alcohol because of Clifford's

6   behavior is uncorroborated and therefore, pursuant to Scott v.

7   Henrich, insufficient to establish either fact.  This contention

8   without merit.  As discussed above, under Scott the court is

9   required to "carefully examine all the evidence in the record,

10  such as medical reports, contemporaneous statements by the

11  officer and the available physical evidence, as well as any

12  expert testimony proferred by the plaintiff, to determine whether

13  the officer's story is internally consistent and consistent with

14  other known facts."  Scott, 39 F.3d at 915.

15      Here, Clark was interviewed the day after the shooting and

16  told the interviewer that Clifford's car

17          stereo was blasting loud enough to where, uh,
            it was a nuisance in my opinion and it was –
18          if the car was driving and I would have
            noticed the same volume on the stereo, I
19          would have pulled the car over.  Um, it
            caught my attention as I went into the store
20          to get my water, and I was like okay, I need
            to find out where that stereo noise is coming
21          from.  Coming back out from getting my water,
            go get in the car and scan the parking lot,
22          see okay, there's two cars.  The first car
            was empty and the second car, as I'm getting
23          closer I can tell that it was coming from
            that car.
24

25

26  Defs.' Ex. A (ECF No. 21-6) at 12.  In addition, the toxicology

27  report on Clifford included findings of a blood alcohol level of

28  0.223 and 8.0 ng/ml of methamphetamine.  Defs.' Ex. F (ECF No.

21-6) at 65; Streed Exp. Rep. (ECF No. 48-1) at 15.  Clark's
stated reasons for approaching the car and detaining Clifford are
"internally consistent and consistent with other known facts."
Scott, 39 F.3d at 915.

Clark is entitled to qualified immunity on this claim.  When
he approached the car, Clark had a reasonable suspicion that loud
music was coming from the car, and once he observed Clifford, he
had a reasonable suspicion that Clifford was under the influence
of drugs or alcohol.  Even though "it is difficult to imagine a
less threatening offense than playing one's car stereo at an
excessive volume", U.S. v. Grigg, 498 F.3d 1070, 1077 (9th Cir.
2007), it is nonetheless an infraction under the Placer County
noise ordinance.  Once Clark observed Clifford, he had a
reasonable suspicion that plaintiff was under the influence of
drugs or alcohol.  He is therefore entitled to qualified immunity
on this claim.  See Ramirez v. City of Buena Park, 560 F.3d 1012,
1020-21 (9th Cir. 2009) (officer entitled to qualified immunity
for detaining individual suspected of being under influence of
controlled substance).

## 2.  Second and Eighth Causes of Action

Plaintiff's second claim is that his rights under the Fourth
Amendment were violated by use of excessive and deadly force.
Clark seeks summary judgment on this claim on the ground of
qualified immunity, and contends the same analysis applies to
plaintiff's eighth cause of action.  The court turns first to
whether the evidence, viewed in the light most favorable to
plaintiff, could, if proved, establish a violation of the Fourth
Amendment by use of excessive and unnecessary deadly force.

16

An objectively unreasonable use of force is constitutionally excessive and violates the Fourth Amendment's prohibition against unreasonable seizures. Graham v. Connor, 490 U.S. 386, 394-96, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Tekle v. United States, 511 F.3d 839, 844 (9th Cir.2007). Determining the reasonableness of an officer's actions is a highly fact-intensive task for which there are no per se rules. Scott, 550 U.S. at 383, 127 S.Ct. 1769. We recognize that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," Graham, 490 U.S. at 397, 109 S.Ct. 1865, and that these judgments are sometimes informed by errors in perception of the actual surrounding facts.

Not all errors in perception or judgment, however, are reasonable. While we do not judge the reasonableness of an officer's actions "with the 20/20 vision of hindsight," id. at 396, 109 S.Ct. 1865, nor does the Constitution forgive an officer's every mistake. See Maryland v. Garrison, 480 U.S. 79, 87 n. 11, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). Rather, we adopt "the perspective of a reasonable officer on the scene ... in light of the facts and circumstances confronting [her]." Graham, 490 U.S. at 396, 109 S.Ct. 1865.. . . .

Standing in the shoes of the "reasonable officer," we then ask whether the severity of force applied was balanced by the need for such force considering the totality of the circumstances, including (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396, 109 S.Ct. 1865; Blanford v. Sacramento Cnty., 406 F.3d 1110, 1115 (9th Cir.2005).

1  <u>Torres</u>, 648 F.3d at 1123-24; <u>see also</u> <u>Gonzalez v. City of</u>

2  <u>Anaheim</u>, 747 F.3d 789, 793-94 (9th Cir. 2014) (en banc).

3       "The immediacy of the threat posed by the suspect is the

4  most important factor." <u>Gonzalez</u>, 747 F.3d at 793 (citing <u>Mattos</u>

5  <u>v. Agarano</u>, 661 F.3d 433, 441 (9th Cir.2011) (en banc)). In

6  addition, "the 'alternative methods of capturing or subduing a

7  suspect' available to the officers" are "also relevant to

8  reasonableness." <u>Gonzalez</u>, 747 F.3d at 794 (quoting <u>Smith v.</u>

9  <u>City of Hemet</u>, 394 F.3d at 703).

10       The reasonableness test outlined in <u>Graham</u> applies equally

11  to the use of deadly force. <u>See</u> <u>Price v. Sery</u>, 513 F.3d 962, 968

12  (9th Cir. 2008) (discussing <u>Scott v. Harris</u>, 550 U.S. 372 (2007)).

13  Moreover,

14        "the mere fact that a suspect possesses a
weapon does not justify deadly force." <u>Haugen</u>
15        <u>v. Brosseau</u>, 351 F.3d 372, 381 (9th
Cir.2003), rev'd on other grounds, 543 U.S.
16        194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)
(citing <u>Harris v. Roderick</u>, 126 F.3d 1189,
17        1202 (9th Cir.1997) (holding, in the Ruby
Ridge civil case, that the FBI's directive to
18        kill any armed adult male was
constitutionally unreasonable even though a
19        United States Marshal had already been shot
and killed by one of the males)); <u>Glenn</u>, 673
20        F.3d at 872 (suspect's mere "possession of a
knife" is "not dispositive" on immediate-
21        threat issue); <u>Curnow</u>, 952 F.2d at 324-25
(holding that deadly force was unreasonable
22        where the suspect possessed a gun but was not
pointing it at the officers and was not
23        facing the officers when they shot).
24

25

26  <u>Hayes v. County of San Diego</u>, 736 F.3d 1223, 1233 (9th Cir. 2013).

27

28

1      "'Because [the excessive force inquiry] nearly always
2   requires a jury to sift through disputed factual contentions, and
3   to draw inferences therefrom, . . . summary judgment should be
4   granted sparingly in excessive force cases.'"   Glenn v.
5   Washington County, 673 F.3d 864, 871 (9th Cir. 2011) (quoting
6   Smith v. City of Hemet, 394 F.3d at 701).   "This principle
7   applies with particular force where the only witness other than
8   the officers was killed during the encounter."   Gonzalez, 747
9   F.3d at 795 (citing Glenn v. Washington County, 673 F.3d at
10  871); see also Torres v. City of Madera, 648 F.3d 1119, 1125 (9th
11  Cir. 2011)(summary judgment should be granted sparingly in
12  excessive force cases).

13      Clark approached Clifford's car because loud music was
14  coming from the car.   At most, this was an alleged violation of a
15  Placer County noise ordinance, a very minor infraction.   Clark
16  described Clifford as "real slow . . . with his movements," not
17  "real alert," "very disheveled" with "real glossy" eyes, non-
18  responsive to initial directives from Clark, almost incapable of
19  getting himself back into the car, and then "incoherent" and
20  "unintelligible" in responses he did make.   Clark's observations
21  of Clifford gave rise to a suspicion that Clifford was under the
22  influence of drugs or alcohol and, in fact, toxicology reports
23  showed that Clifford's blood alcohol level was 0.223 after his
24  death.

25      Clark's description of events also raises conflicting
26  questions about whether Clifford knew Clark was a police officer.
27  Clark's marked patrol car was parked behind Clifford's car with
28  the spotlight shining directly on Clifford's car.   Clark Decl.

(ECF No. 21-4) at ¶ 5.  Clark states that Clifford did appear to
respond to an order to produce identification, compare id. at ¶ 9
with Defs. Ex. A (ECF No. 21-6) at 14, which leads to an
inference Clifford knew Clark was a police officer.  However,
Clark did not verbally identify himself as a police officer when
he initially approached the car, and did not do so until Clifford
asked who Clark was after Clark had pulled his gun and was
pointing it at Clifford.  Defs. Ex. A (ECF No. 21-6) at 9.  Clark
reported that Clifford repeatedly asked who Clark was and to see
his badge and Clark acknowledged he had thought it was possible
Clifford had not seen his full uniform.  Id. at 15.  Clark also
testified that he was shining his flashlight directly in
Clifford's eyes to adversely affect his vision, thus raising at
least an inference that Clifford could not see well and was in
fact confused about who Clark was and what was occurring.

The foregoing gives rise to a reasonable inference that
Clifford was too impaired and confused to make a controlled reach
for the gun on the passenger seat.  The mere fact that Clifford
had a gun in the car, without more, did not justify the use of
deadly force.  See Hayes v. County of San Diego, 736 F.3d at
1233.

The key question here is "whether a reasonable jury would
necessarily find that" Clark "perceived an immediate threat of
death or serious physical injury at the time he shot" Clifford
such that the use of deadly force was reasonable.  Gonzalez, 747
F.3d at 794.  Clark's description of events, if believed, is of a
"tense, uncertain, and rapidly evolving" situation during which
Clifford refused to comply with orders to keep his hands on the

1   steering wheel and became more hostile and aggressive before

2   deliberately and in a controlled manner reaching for the gun.

3   Clark avers that Clifford made a controlled full arm's length

4   reach for the gun after failing to comply with repeated orders to

5   keep his hands on the steering wheel and not reach for the gun.

6   If this is true, no reasonable jury would conclude that Clark

7   violated Clifford's Fourth Amendment rights and, in any event,

8   this court would find Clark entitled to qualified immunity.

9       Clark's description of Clifford as significantly impaired,

10  moving slowly, and confused about what was going on, together

11  with the toxicology report showing Clifford's blood alcohol level

12  at .223, however, raise serious questions about whether Clifford

13  was capable of making a controlled reach for the gun.  These

14  questions, in turn, give rise to a question about Clark's

15  credibility which must be resolved by a jury.  If a jury believes

16  that Clifford was too impaired to make a controlled reach for the

17  gun it could disbelieve Clark's asserted reason for shooting

18  Clifford.  And if the jury disbelieved Clark's testimony that

19  Clifford made a controlled reach for the gun, it could disbelieve

20  some or all of Clark's testimony concerning events leading up to

21  the shooting.  See Enying Li v. Holder, 738 F.3d 1160, 1164 (9th

22  Cir. 2013) (it is the "general law of the Ninth Circuit" that "a

23  witness 'deemed unbelievable as to one material fact may be

24  disbelieved in all other respects.'")(internal citation omitted).

25      Viewed in the light most favorable to plaintiff and drawing

26  all reasonable inferences therefrom, a reasonable jury could

27  conclude that Clifford was too impaired to make a controlled

28  reach for the gun and that Clark's asserted reason for shooting

1 Clifford is not credible.  If it so concluded, the jury could

2 also find that Clark's used of deadly force was unreasonable and

3 excessive and violated the Fourth Amendment.

4     The second prong of the qualified immunity analysis requires

5 the court to decide whether it would have been clear to a

6 reasonable officer in Clark's position that his use of deadly

7 force was unlawful in the situation he faced.  The question of

8 whether a defendant is entitled to qualified immunity is a

9 question of law for the court.  <u>Torres</u>, 548 F.3d at 1210.

10 However, the court only resolves that question of law if all

11 material facts are undisputed and, taken in the light most

12 favorable to the plaintiff, the facts show the defendant did not

13 violate clearly established federal constitutional rights.  <u>Id.</u>

14     At all times relevant to this action, it was clearly

15 established that the use of deadly force was reasonable only if

16 an officer "'has probable cause to believe that the suspect poses

17 a significant threat of death or serious physical injury to the

18 officer or others.'"  <u>Long v. City and County of Honolulu</u>, 511

19 F.3d 901, 906 (9th Cir. 2007)(quoting <u>Scott v. Henrich</u>, 39 F.3d at

20 194, in turn quoting <u>Tennessee v. Garner</u>, 471 U.S. at 3 (1985)).

21 The same credibility question that precludes summary judgment on

22 the merits of plaintiff's second and eighth claims preclude a

23 finding that Clark is entitled to qualified immunity on these

24 claims.

25     For all of the foregoing reasons, defendants' motion for

26 summary judgment will be denied as to plaintiff's second and

27 eighth causes of action.

28

1

### B. Fifth Cause of Action

2       Plaintiff's fifth cause of action is a wrongful death claim
3   under § 1983 that by shooting and killing Clifford defendant
4   deprived "plaintiffs and the decedent of certain constitutionally
5   protected rights" including but not limited to freedom from
6   unlawful searches and seizures, deprivation of life and liberty
7   without due process, and freedom from excessive force.  Defendant
8   seeks summary judgment on this claim on the ground that a
9   wrongful death action under § 1983 is not the appropriate vehicle
10  for recovery for violation of the decedent's constitutional
11  rights.  Plaintiff does not oppose this part of the motion.
12  Plaintiff's fifth claim will therefore be dismissed.

13      ### C. Sixth Cause of Action

14      Plaintiff's sixth cause of action is for loss of familial
15  relationship.  The claim is governed by the substantive due
16  process clause of the Fourteenth Amendment.  Defendants seek
17  summary judgment on this claim on the ground that   "Such a claim
18  requires the plaintiffs to prove that the officers' use of force
19  'shock[ed] the conscience.'  Porter v. Osborn, 546 F.3d 1131, 1137
20  (9th Cir.2008)."  Gonzalez, 747 F.3d at 797.  Deliberate
21  indifference may shock the conscious if the actor has time to
22  deliberate before committing the conscious-shocking action.  See
23  County of Sacramento v. Lewis, 523 U.S. 833, 849-50 (1998).  To
24  determine whether this standard applies "the 'critical
25  consideration [is] whether the circumstances are such that
26  'actual deliberation is practical.'"  Porter, 546 F.3d at 1137
27  (internal citations omitted).  Otherwise liability only lies when
28  the officer acts with a "purpose to harm."  Porter, id.

23

1      In <u>Porter</u>, the Ninth Circuit held that the "purpose to harm"

2  standard applied to a claim against a police officer who shot and

3  killed an individual during a "rapidly escalating confrontation"

4  that began when officers "were responding to a call about an

5  apparently abandoned vehicle." <u>Porter</u>, 546 F.3d at 1133.  In

6  contrast, the deliberate indifference standard applies in

7  "situations that evolve in a time frame that permits the officer

8  to deliberate before acting and those that escalate so quickly

9  that the officer must make a snap judgment." <u>Id</u>. at 1137.

10     Here, the "purpose to harm" standard and the "deliberate

11  indifference" standard focus on the officer's state of mind.

12  While there are questions that require trial over the

13  reasonableness of Clark's actions, the evidence, even viewed in

14  the light most favorable to plaintiff, does not support a finding

15  that Clark had a sufficiently culpable state of mind under either

16  standard to support plaintiff's Fourteenth Amendment claim.

17  Defendant Clark is entitled to summary judgment on this claim.

18     **D.  State Law Claims**

19        **1.  Wrongful Death -- Negligence**

20     Defendants seek summary judgment on plaintiff's negligence

21  claim on the ground that Clark acted reasonably in using deadly

22  force.  The reasonableness standard that applies to this claim is

23  the same as the reasonableness standard that applies to

24  plaintiff's Fourth Amendment excessive force claim. <u>See</u> <u>Hernandez</u>

25  <u>v. City of Pomona</u>, 46 Cal.4th 501, 513-14 (2009).  The credibility

26  question that precludes summary judgment for Clark on plaintiffs'

27

28

1    Fourth Amendment excessive force claim precludes summary judgment

2    on this claim.[9]

3               **2.   Intentional Infliction of Emotional Distress**

4         Clark seeks summary judgment on plaintiff's claim for

5    intentional infliction of emotional distress on the grounds that

6    (1) Clark's conduct was not directed to plaintiff; (2) the

7    conduct was privileged; and (3) the conduct was not extreme or

8    outrageous.  Plaintiff only challenges that portion of the

9    argument that contends the conduct was privileged under

10   California Penal Code § 196, which protects reasonable use of

11   force.

12        California law "'limits claims of intentional infliction of

13   emotional distress to egregious conduct *toward plaintiff*

14   proximately caused by defendant.'"  Christensen v. Superior

15   Court, 54 Cal.3d 868, 905 (1991) (internal citation omitted).

16   "The only exception to this rule is that recognized when the

17   defendant is aware, but acts with reckless disregard, of the

18   plaintiff and the probability that his or her conduct will cause

19   severe emotional distress to that plaintiff."  Id. There is no

20   evidence that Clark was aware of Clifford's mother, and she was

21   not present at the shooting.  For this reason, Clark is entitled

22   to summary judgment on this claim.

23               **3.   Assault and Battery**

24        Clark seeks summary judgment on plaintiff's eleventh and

25   twelfth causes of action on the grounds that his use of force was

26   reasonable and that both claims "are disposed of in light of the

27   ⎰
     [9] Defendants also seek summary adjudication of this claim on the grounds that
28   it is not asserted as a survival claim and because plaintiff does not assert a
     statutory basis of liability.  Neither of these contentions has merit.

                                    25

1   Fourth Amendment excessive force analysis."[10],[11]   As with the

2   negligence claim, the state law battery claim "is a counterpart

3   to a federal claim of excessive use of force.   In both, a

4   plaintiff must prove that the peace officer's use of force was

5   unreasonable."   Brown v. Ransweiler, 171 Cal.App.4th 516, 527

6   (2009).   The credibility question that precludes summary judgment

7   for Clark on plaintiffs' Fourth Amendment excessive force claim

8   precludes summary judgment on plaintiff's battery claim.

9       Clark's contention that he is entitled to immunity under

10  California Penal Code § 196 is governed by "whether the

11  circumstances 'reasonably create[d] a fear of death or serious

12  bodily harm to the officer or to another.'"   Brown, 171

13  Cal.App.4th at 816 (quoting Martinez v. County of Los Angeles, 47

14  Cal.App.4th 334, 349 (1996)).   Again, the same credibility

15  question precludes summary judgment on this claim on the ground

16  of state law immunity.

17      In accordance with the above, IT IS HEREBY ORDERED that:

18      1.   Defendants' motion for summary judgment is granted in

19  part and denied in part, as follows:

20          a.   Summary judgment is granted for defendants on

21  plaintiffs' first, third, fourth, fifth, sixth, seventh, and

22  tenth causes of action;

23          b.   Summary judgment is granted in favor of defendants

24  Placer County and Placer County Sheriff's Office;

---

[10] Defendants do not brief the assault claim separately from the battery claim.

[11] Defendants assert a variety of other grounds, including that the two causes of action are personal to Clifford but not raised as survival claims.   At most, dismissal on this basis would require leave to amend.   Where, as here, plaintiff has given sufficient notice of the basis of the claim the court construes eleventh and twelfth causes of action as properly pleaded.

26

1          c.   The Estate of Robert (Bobby) S. Clifford is

2    dismissed as a plaintiff; and

3          d.   Summary judgment is denied for defendant Clark on

4    plaintiff's second, eighth, ninth, eleventh and twelfth causes of

5    action.

6          DATED:  August 27, 2014.

7

8

9

10                          LAWRENCE K. KARLTON
                            SENIOR JUDGE
11                          UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28